**Ian Paul BRISCOE, Appellant,**

v.

**UNITED STATES of America.**
**Appellee.**

**No. 20680.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 16, 1967.

Decided Feb. 2, 1968.

Mr. Leonard B. Boudin, Washington, D. C. (appointed by this court), for appellant. Mr. Stanley O. Sher, Washington, D. C. (appointed by this court) also entered an appearance for appellant.

Mr. Henry K. Osterman, Sp. Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and William M. Cohen, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM.

This is an appeal from the District Court's denial of motions to vacate sentences and set aside two housebreaking convictions. Briscoe, an alien, was arrested for vagrancy in Florida in 1964, and was brought back to the District of Columbia in connection with two housebreaking charges pending against him here. He pled guilty in both cases. In one case, the matter was, in appellant's words, "pretty well open and shut." But his subsequently entered plea in the other, Crim. No. 349–65, was motivated by his desire to have both these cases terminated by his deportation—as an alien twice convicted of crimes involving moral turpitude, see 8 U.S.C. § 1251(a) (4)—rather than by imprisonment. He assumed that this disposition would be satisfactory to the Government because it ensured his absence without taxpayer expense. Another judge imposed sentence, two-to-seven year terms on each charge, to run consecutively.

■ We do not accept appellant's contention that his guilty plea must be set aside as involuntary because it was induced by his misunderstanding, in that he thought he was in fact to be deported. After a hearing, the District Judge denied appellant's motion under 28 U.S.C. § 2255 to set aside the guilty plea because there was no showing that either the prosecution or appellant's counsel had made any promise to appellant that deportation would ensue on his plea. This ruling is sound. However in view of the other aspects in the case which we shall discuss, we vacate the sentences in both cases and remand both for a new hearing on the voluntariness of the guilty plea in Crim. No. 349–65 and for reimposition of sentences.

A. *Vacation of Sentences*

■ The District Court was, of course, under no obligation to accede to appellant's desires and to turn him over to the Immigration and Naturalization Service for deportation in lieu of serving a sentence in a United States institution. However, whether Briscoe should have been deported was not an insubstantial question. Responsible citizens who knew Briscoe, as well as an alien assistance group, wrote letters urging that despite his criminal record he was a far from hopeless case, and that deportation was the remedy most like to effectuate his ultimate rehabilitation.[1] Yet the sentencing judge did not consider whether rehabilitation (or general achievement of sentencing objectives) was more likely with deportation than with long imprisonment. In fact, despite counsel's urging he refused to have anything to do with the question. The court stated "I don't think that the Court should get involved in any possible deportation. That is a matter for the Immigration Service. The Court will deal with this on that basis."

This refusal to exercise discretion was impermissible, and requires that we remand for reconsideration of the sentence. See Leach v. United States, 115 U.S.App.D.C. 351, 320 F.2d 670 (1963) (remanded where court failed to get psychiatric information before sentencing). Rehabilitation and reformation of offenders are "important goals of criminal jurisprudence," Williams v. People of State of New York, 337 U.S. 241, 248, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), and while choosing among sentencing alternatives is a task for the trial court, it may not refuse to "involve" itself in the question what disposition is most likely to further those goals. Indeed, the rule that appellate courts do not review matters of sentencing is premised on the notion that the trial court will exercise its discretion rather than refuse to do so.

■ The need for attentive consideration of this issue by the sentencing judge

---

**1.** It is not clear that all this matter was before the sentencing court, as references were made at the voluntariness hearing to letters addressed to the judge who took the plea of guilty to the first (1964) housebreaking charge that do not appear in the files of that case. However, letters were certainly present at the time of the motion for reduction of sentence, which was denied without indication that deportation was considered.

is highlighted by the apparent unavailability of such consideration elsewhere. The extensive efforts of appellant's counsel towards securing the support of other Government agencies for deportation were rebuffed on the assumption that the question was exclusively within the ken of the sentencing court. Contrary to what the District Judge thought, deportation is not a matter for the Immigration and Naturalization Service, because under 8 U.S.C. § 1252(h) an alien cannot be deported until he is released from prison. Thus release could not be effected except by order of the sentencing judge.

The United States Attorney's Office advised appellant's attorney that it could take no step as to deportation because of its long-standing policy to decline to initiate any sentencing recommendations whatever. Even the probation officer preparing the presentence report declined to recommend or oppose deportation. He noted the availability of the remedy, and deferred to the sentencing court the question of whether it would be appropriately invoked in Briscoe's case.

On this record no responsible Government official has yet addressed himself to whether it makes sense to incarcerate Briscoe rather than let him join the British Marines, which is the course he seeks to pursue. The only official vested with authority to make that determination was the sentencing judge, and his refusal to consider the question cannot stand.

B. *Voluntariness of Guilty Plea*

█ We also rule that a new hearing is required on the voluntariness of the guilty plea in Crim. No. 349–65—the second housebreaking charge—to which Briscoe confessed while imprisoned in Florida.

The Government's case on the merits had difficulties. Its success turned on whether appellant's confession would have been admissible. Appellant's confession was made to the attorney of his alleged partner in crime. It implicates appellant, but (apparently falsely) exonerates his partner. The latter was appellant's cellmate, and, it is alleged, was threatening him. There is a substantial question on the merits, then, whether the confession was admissible. Even assuming the involuntariness of this confession because of the circumstances under which it was given, the Government might seek a ruling of admissibility on the ground that appellant did not repudiate the confession when he was brought before the Commissioner in Florida. (He says he did not want to be a fink.) This in turn may require consideration of the problem that appellant did not have counsel before the Commissioner. He had asked for counsel and was told that there were no facilities for providing him with one.

Rather than challenging the weakness of the Government's case, Briscoe pled guilty. It is clear from the testimony given at the voluntariness hearing by Briscoe, his various counsel, and even the Assistant United States Attorney, that Briscoe entered his plea in 349–65 because he thought it was necessary to have this conviction, in addition to his recent plea to the 1964 housebreaking, in order to render himself amenable to deportation under 8 U.S.C. § 1251(a) (4)—which requires two "convictions" arising out of separate schemes of criminal conduct.

█ Appellant's counsel at that time, a Prettyman intern, was of the opinion that Briscoe's 1960 conviction of housebreaking would not serve as a "conviction" for purposes of § 1251(a) (4) because he had been sentenced pursuant to the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5024. Counsel's view in all likelihood originated from 18 U.S.C. § 5021, which requires the setting aside of the conviction of a youth offender if he is unconditionally discharged prior to serving the maximum sentence imposed on him. Even assuming that such expungement would prevent use of the conviction for deportation purposes, Briscoe had not been discharged and in fact, on his record, had no realistic chance of being unconditionally discharged. Only a year

remained of his sentence under the Youth Corrections Act and he had been arrested for two housebreakings committed while he was on conditional release pursuant to the Youth Offenders Act. A purely theoretical possibility of future grace does not prevent a conviction from being final for deportation purposes.

The Board of Immigration Appeals has repeatedly held that the possibility a conviction may be set aside does not keep it from being used for deportation purposes. Matter of R–R, 7 I. & N. 478, 483–85; Matter of P, 8 I. & N. 517 (Federal Youth Corrections Act); Matter of H–V–, 9 I. & N. 428 (Federal Youth Corrections Act), and see Hernandez-Valensuela v. Rosenberg, 304 F.2d 639 (9th Cir. 1962). Thus counsel could have learned from Government counsel that under Immigration and Naturalization Service practice Briscoe could have been deported in fact, so far as the Service was concerned, without pleading to the second housebreaking charge.

■ In view of the administrative construction, we think it plain that the conviction under the Youth Offenders Act may be used as one of the two convictions necessary for deportation where the conviction has not been expunged and there has been a second conviction for an offense committed subsequent to conditional release.

We need not tarry with the question whether the guidance of counsel alone might give rise to a constitutional claim of ineffective assistance of counsel, see Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967). Here counsel arrived at his erroneous view after consultation with the Assistant United States Attorney in charge of the matter. Counsel's testimony was:

> "One other point that did come out throughout this discussion was the fact of the Defendant's prior plea of guilty under the Youth Corrections Act.

There was a question with [the Assistant United States Attorney]. The first time I recall this, there was a question about whether that might qualify as a conviction, and it was determined between [the Assistant United States Attorney] and myself, and I think later discussed with [prior defense counsel who withdrew] that that would not be a conviction."

We may well have then a case where the Government might have had difficulty in securing a conviction, and a guilty plea was entered because of an error concerning a matter of law where a key element was the existence of Government practice, and the erroneous conclusion was fostered, though we do not say it was initiated, by the Government attorney. We assume that there was no lack of bona fides on anyone's part. This bona fides does not alone negative the possibility that appellant's guilty plea may not be fairly retained. Compare United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y. 1967) (Weinstein, J.). If the Immigration and Naturalization Service practice is as we understand it to be from the reported decisions, and if the Assistant United States Attorney was involved in a significant way in appellant's decision that a further plea was required to render him amenable to deportation under 8 U.S.C. § 1251(a) (4), we think it may well be in the interest of justice that the guilty plea be set aside. We do not decide this issue for this is a sensitive area where legal rulings should not be made in advance of an evidentiary hearing. On the remand, already ordered, there should be a further hearing to make those determinations.[2]

■ In this case, the judge who sentenced Briscoe was not the same judge who took the plea of guilty. Although 28 U.S.C. § 2255 provides that a motion thereunder shall be made to "the court which imposed the sentence," we think its

2. At this further hearing, counsel for Briscoe may press the argument urged in this court, that under all the circumstances of this case—multiple counsel, defendant's misapprehension of the likelihood of deportation—relief should be granted, and the plea set aside, in order to prevent "manifest injustice."

purpose is better served, where collateral attack is predicated on an infirmity in the taking of the guilty plea, if the motion is disposed of by the plea judge, if only because he may have some recollection of the prior proceedings. In the circumstances of this case this judge should not only conduct the hearing on the motion to vacate the guilty plea, but also, if he decides that adversely to appellant, should then discharge the task, not yet assumed by any judge, of passing sentence after giving consideration to the advisability of deportation, including consideration in the light of the showing made on the motion to vacate the guilty plea.

This avoids multiple consideration and thus, there having been no trial, is in the interest of sound administration of justice.

So ordered.