UNITED STATES of America

v.

**Joy HENRY, Defendant.**

**No. 78 Cr. 261 (IBC).**

United States District Court,
S. D. New York.

Oct. 5, 1978.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States of America; Richard A. Mescon, Asst. U. S. Atty., New York City, of counsel.

Kenneth E. Bruce, New York City, for defendant.

OPINION

IRVING BEN COOPER, District Judge.

The defendant wants a trial. To accomplish it, she seeks to remove an overpowering obstacle—her clear and unequivocal plea of guilty on June 5, 1978 (one day before the scheduled trial date) to a one count indictment charging bank embezzlement in violation of 18 U.S.C. § 656 filed April 17, 1978.

Her counsel firmly presented, at the outset of the taking of plea (22 pages of transcript), defendant's decision to admit guilt.[1]

In the course of her allocution, she admitted preparing and presenting one of the fifty-six cash advance tickets listed in the indictment.

Thus,

Q. Now, if I am to really know what I am doing, you must answer a question that usually is embarrassing, but must be answered, and you must not lie about it because if you lie about it you can be found guilty of an additional crime.

---

1. "If your Honor pleases, at this time, after full conference with my client and after a full investigation of all the facts and circumstances and explanation thereof to the client, . . . the defendant now has authorized me to withdraw her plea of not guilty heretofore entered and to plead guilty to the first count of the indictment. . . ." (Transcript June 5, 1978, p. 2)

Now, what is that question? The question is: What did you do in connection with this particular item? I want the truth, the whole truth and nothing but the truth, and if you start to equivocate and play around you will go to trial tomorrow; do you understand that?

A. Yes, sir.

Q. Let me have it.

A. I typed up a cash advance ticket and presented it to a teller.

Q. A little louder.

A. I typed up a cash advance ticket and presented it to a teller.

Q. All right. And you got the money?

A. Yes.

Q. $250?

A. Yes.

Q. And you put it to use for your own purposes?

A. Yes.

Q. And you knew at the time that you were doing it that you were doing something that was illegal?

A. Yes.

(Tr. June 5, 1978, pp. 10–11).

During the course of taking the plea, we sought to put defendant at her ease: "It is important that you be made to understand exactly what is going on. It is your case . . . you must remember that it is you . . . who are affected by what takes place here . . .. And therefore I want you to understand it fully . . . and you won't be able to be helpful to yourself if you are going to nervous." (Tr. pp. 3, 4)

The defendant revealed that she was 23 and had attended college for two years. She was advised of her right to a fair trial and all the essential steps imperative to its accomplishment. Further, her right to appeal if a jury verdict of guilty as charged were returned, with the right, if indigent, to assigned counsel throughout trial and appeal; that no such right to appeal from a guilty plea is accorded a defendant.

By word and vocal emphasis, we sought to impress upon the defendant that we must be convinced of her guilt by her responses at the proceeding and that her declaration or confession of guilt without more, no matter how frequently repeated, would not suffice; that conviction of crime may be either by jury verdict or plea; that the maximum penalty may be imposed upon conviction resulting from either course; and we pursued each and every inquiry which the law prescribes before a plea of guilty may be officially recorded.

We were anxious to be assured that everything we said at the plea taking proceeding was clearly understood: (To defendant) "Q Is there anything that I have said that you don't understand? A No, sir." (Tr. p. 13) (To counsel) "Mr. Bruce, does anything occur to you that I may not have covered, because I am anxious to have this client of yours understand everything at this particular time? MR. BRUCE: The Court's position has been made perfectly clear to defense counsel, your Honor, and to the defendant, and I would say that there is nothing further to be gone into." (Tr. pp. 18, 19)

■ We were satisfied that the defendant's guilty plea was entirely voluntary (no threats or promises, etc.), unambiguous in every respect and devoid of uncertainty. In our search for truth, we are as much a fact finder when taking a guilty plea as we are when rendering final judgment in a case tried to the Court.

■ Defendant's motion to withdraw her guilty plea, made on the eve of sentence, is based on the barest of conclusory allegations: (1) she was emotionally upset at the time of plea; (2) she acted on the advice of prior counsel; and (3) she is innocent of the charge to which she pled guilty. Clearly, defendant has failed to carry the burden of satisfying us that there are valid grounds for withdrawing her guilty plea. *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir. 1977).

■ Further, defendant's conclusory assertion of innocence is insufficient in law and must be cast aside. *United States v.*

*Saft,* 558 F.2d 1073, 1082, n. 11 (2d Cir. 1977).[2]

■ After we took defendant's guilty plea, we directed a thorough probation report be made ready for sentence. Thereafter we learned she refused to even appear at the office of the probation officer assigned to her case. The moving affidavit (p. 2) asserts "the defendant is unable to comply with the Court's direction; the Assistant United States Attorney, and the Probation Department, to be candid in her involvement of the allegations of the indictment." We repeatedly stated that defendant need not speak to the Probation Officer about the facts of this offense and should do so only after consulting with her attorney. (Tr. pp. 15–17). Our exhortation was only that if defendant chose to speak to the Probation Officer about the offense, she should be open and candid. In any event, her unwillingness to talk to the Probation Officer has absolutely no relevance to the voluntariness of her admission of guilt made in open court.

We are overwhelmingly satisfied that defendant's guilty plea was voluntary and taken in full compliance with all the requirements of Rule 11 of the Federal Rules of Criminal Procedure. She has failed completely to meet her burden of establishing valid grounds for withdrawing her plea.[3] Her conviction by plea stands.

Motion denied in all respects.

SO ORDERED.

---

**2.** See also, *United States v. Smith,* 407 F.2d 33 (2d Cir. 1969); *United States v. Hughes,* 325 F.2d 789 (2d Cir.), *cert. denied,* 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964).

**3.** The defendant's reliance on *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) is unfounded, there having been no promise by the prosecutor in this case. The conclusory assertion that there has been no prejudice to the Government overlooks the prejudice flowing from the need to reassemble witnesses and other evidence months after the scheduled trial date, as well as the fact that "the Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a guilty plea, although such prejudice may be considered." *United States v. Saft, supra* at 1083.